AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
## for the
### Northern District of California

| | |
|---|---|
| United States of America<br>v.<br><br>MARCO ANTONIO VASQUEZ-MIDENZE<br><br>*Defendant(s)* | Case No. 3:24-mj-70163 MAG |

**FILED**

Jan 31 2024

Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __January 29, 2024__ in the county of __San Francisco__ in the __Northern__ District of __California__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. section 841(a)(1), (b)(1)(C) | Possession of Fentanyl with the Intent to Distribute<br>Maximum penalties:<br>- Imprisonment: 20 Years<br>- Fine: $1 Million<br>- Supervised Release: minimum 3 yrs - maximum life<br>- Special Assessment: $100<br>- Forfeiture/Immigration & Naturalization Consequences/Denial of Fed Benefits |

This criminal complaint is based on these facts:

See attached Affidavit of DEA Special Agent Katie Coggins

☑ Continued on the attached sheet.

/s/
*Complainant's signature*

Katie Coggins, DEA Special Agent
*Printed name and title*

Approved as to form  /s/ E. Wistar Wilson
AUSA E. Wistar Wilson

Sworn to before me by telephone.

Date: 1/30/2024

City and state:

*Judge's signature*

Hon. Lisa J. Cisneros, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR AN ARREST WARRANT AND CRIMINAL COMPLAINT

I, Katie Coggins, a Special Agent with the Drug Enforcement Administration (DEA) having been duly sworn, hereby depose and state as follows:

## INTRODUCTION

1. I make this affidavit in support of an application for an arrest warrant and criminal complaint charging Marco Antonio VASQUEZ-MIDENZE, (also known as Marcos Antonio VASQUEZ MIDENZE) ("VASQUEZ-MIDENZE") with 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), based on his possession with the intent to distribute the following controlled substance: a mixture and substance containing a detectable amount of N-phenyl-N- [ 1- ( 2-phenylethyl ) -4-piperidinyl ] propanamide (fentanyl), on or about January 29, 2024, in San Francisco, California, in the Northern District of California.

## SOURCES OF INFORMATION

2. The facts in this affidavit come from my personal observations, my training and experience, information from records and databases, and information obtained from other agents, officers, and witnesses. Where statements made by other individuals (including other Special Agents and law enforcement officers) are referenced in this Affidavit, such statements are described in sum and substance and in relevant part. Similarly, where information contained in reports and other documents or records is referenced in this Affidavit, such information is also described in sum and substance and in relevant part.

3. Because this Affidavit is submitted for the limited purpose of establishing probable cause for a criminal complaint and arrest warrant, I have not included every fact known to me about this case. Rather, I have set forth only the facts that I believe are necessary to support probable cause for a criminal complaint and arrest warrant. My understanding of the facts and circumstances of the case may evolve as the investigation continues.

**AFFIANT BACKGROUND**

4. I am a Special Agent (SA) of the DEA, within the United States Department of Justice, and have been so employed since August 2023. I am currently assigned to investigate drug trafficking organizations as a member of the DEA's San Francisco Division Metro Task Force Group 1.

5. I am an investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7). I am empowered by law to conduct investigations, to execute search warrants, and to make arrests for offenses of Federal law, including violations of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).

6. Prior to my employment with the DEA, I completed my Master of Science Degree in Criminal Justice. I also earned a Bachelor of Science in Psychology in 2021.

7. As a DEA Special Agent, I have assisted in the execution of search warrants for controlled substances and/or related paraphernalia, and other evidence of violations of federal drug statutes. I have participated in investigations targeting individuals and organizations trafficking controlled substances as defined in Title 21, United States Code, Section 802(6).

8. I received 17 weeks of specialized drug law enforcement training at the DEA training academy in Quantico, Virginia, from August 2023 to December 2023. This training included several hundred hours of comprehensive, formalized instruction in, but not limited to, narcotics investigations, drug identification, detection, identification and seizure of drug-related assets, undercover operations, and electronic and physical surveillance procedures. This training included instruction in the investigation of federal drug violations, including, but not limited to Title 21, United States Code, Sections 841 and 846.

9. Through my training, experience, and interaction with other experienced Special Agents, Task Force Officers, and other drug investigators, I have become familiar with the methods employed by drug traffickers to smuggle, safeguard, store, transport, and distribute

drugs, and to collect and conceal drug-related proceeds, and to communicate with other participants to accomplish such objectives.

10. I have personally participated in the investigation discussed in this affidavit. I am familiar with the facts and circumstances of the investigation through my personal participation in it based on several investigative techniques, including discussions with agents of the DEA and with other law enforcement agencies, and review of records and reports relating to the investigation. Unless otherwise noted, wherever in this affidavit I assert that a statement was made, the statement is not being recounted verbatim but instead only in substance and in part. Facts not set forth herein, or in any attached exhibits, are not being relied on in reaching my conclusion that the requested order should be issued. Nor do I request that this Court rely on any facts not set forth herein in reviewing this application.

## APPLICABLE STATUTE

11. **Possession of Controlled Substance with Intent to Distribute**. Under Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C), it is unlawful for any person to knowingly or intentionally possess with intent to distribute a federally controlled substance. Under 21 C.F.R. § 1308.12, fentanyl is a Schedule II controlled substance.

## STATEMENT OF PROBABLE CAUSE

12. On January 29, 2024, VASQUEZ-MIDENZE was arrested by agents from DEA, the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), Homeland Security Investigations (HSI), and the Federal Bureau of Investigation (FBI) on Hyde Street near the intersection with Golden Gate Avenue in San Francisco, California, in the Northern District of California. Based on the facts described below, there is probable cause that VASQUEZ-MIDENZE violated 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), based on his possession with intent to distribute a mixture and substance containing a detectable amount of N-phenyl-N- [ 1- ( 2-phenylethyl ) -4-piperidinyl ] propenamide (fentanyl).

13. On January 29, 2024, at approximately 9:00 p.m., law enforcement personnel began conducting surveillance remotely in the vicinity of Hyde Street and Golden

Gate Avenue via a live video surveillance device.  I personally reviewed the surveillance video described below. The intersection of Hyde Street and Golden Gate Avenue is located within San Francisco's Tenderloin district—an area known for open-air narcotics trafficking at all hours of the day and night.  Law enforcement personnel observed a male individual standing on the sidewalk, leaned up against a silver SUV, and wearing khaki pants and a black puffer jacket with a hood.  This individual was later identified as VASQUEZ-MIDENZE through the use of finger-printing technology implemented by the FBI.

14. At approximately 10:48 p.m., law enforcement personnel observed via live video surveillance VASQUEZ-MIDENZE still standing on the sidewalk by the silver SUV.  Several individuals were observed gathered around VASQUEZ-MIDENZE. Law enforcement personnel observed VASQUEZ-MIDENZE reach into his right pants pocket, pull out a plastic baggie that appeared to contain a white substance, and hand it to an unidentified individual wearing black attire. The unidentified individual walked away shortly after being handed the baggie.

15. At approximately 10:49 p.m., law enforcement observed VASQUEZ-MIDENZE manipulating what appeared to be another clear baggie that appeared to contain a white substance. At this time, VASQUEZ-MIDENZE was talking to an unidentified female.

16. At approximately 10:50 p.m., law enforcement personnel's view via live video surveillance was temporarily obstructed because an unidentified person passed in front of the camera. Moments later, law enforcement personnel observed the unidentified female reach toward VASQUEZ-MIDENZE, seemingly passing him cash. Law enforcement personnel were able to observe the unidentified woman cupping what appeared to be a white substance in her hand.

17. At approximately 11:01 p.m., law enforcement personnel observed VASQUEZ-MIDENZE manipulating what appeared to be cash in his hands.

18. Based on the above, law enforcement believed probable cause existed to arrest VASQUEZ-MIDENZE for a violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).

19. At approximately 11:01 p.m., after observing these two prior hand-to-hand narcotics transactions, law enforcement personnel converged on the defendant's location, identified themselves as law enforcement, and arrested VASQUEZ-MIDENZE for the suspected possession with intent to distribute controlled substances on Hyde Street. When law enforcement personnel arrived on the corner of Hyde Street and Golden Gate Avenue, VASQUEZ-MIDENZE initially walked north on Hyde Street away from the law enforcement presence.

20. At the scene of the arrest, law enforcement personnel conducted a search of VASQUEZ-MIDENZE's person incident to arrest and located the following:

   a. a small clear baggie containing a white substance suspected to be fentanyl, located in VASQUEZ-MIDENZE's hand, which was determined to weigh 0.8 grams (including packaging), pictured below;



    b. a large clear baggie filled with several smaller clear baggies containing white substances suspected to be fentanyl located in the right pocket of VASQUEZ-MIDENZE's pants, which was determined to weigh 55.1 grams (including packaging), pictured below;



    c. a small clear baggie containing a crystal-like substance suspected to be cocaine base located in the right pocket of VASQUEZ-MIDENZE's pants, which was determined to weigh 10.5 grams (including packaging), pictured below;



21. Upon booking, law enforcement recovered an additional 6.0 grams (including packaging) of suspected fentanyl from VASQUEZ-MIDENZE's person during a secondary search. It is pictured below.



22.     The suspected fentanyl seized from VASQUEZ-MIDENZE's pockets, hands, and elsewhere on his person later tested presumptive positive for fentanyl utilizing a TruNarc Analyzer field testing device.  The combined total of the suspected fentanyl weighed 61.9 grams in aggregate gross weight (including packaging).

23.     The suspected cocaine base seized from VASQUEZ-MIDENZE's right pants pocket also later tested presumptive positive for cocaine base utilizing a TruNarc Analyzer.

24.     Based on my training and experience, the amounts of controlled substances that VASQUEZ-MIDENZE had on his person when he was arrested on or about January 29, 2024 were consistent with the amount possessed for distribution as opposed to mere personal use.  In addition, the suspected fentanyl was packaged into several plastic baggies, which I know based on my training and experience is a common method of packaging for distribution.  Law enforcement further found a cell phone and cash bills totaling $55.00 in $1 and $5 denominations on VASQUEZ-MIDENZE's person; I know from my training and experience that street-level narcotics transactions are commonly conducted with cash.  The location of the arrest in San Francisco's Tenderloin District, an area known for a high volume of narcotics trafficking activity, further supports my conclusion that VASQUEZ-MIDENZE possessed the narcotics, including fentanyl, for the purpose of distribution or sale.

## CONCLUSION

25.     Based on the facts and circumstances set forth above, there is probable cause to believe that on or about January 29, 2024, in the Northern District of California, VASQUEZ-MIDENZE possessed with the intent to distribute a mixture and substance containing a detectable amount of N-phenyl-N- [ 1- ( 2-phenylethyl ) -4-piperidinyl ] propenamide (fentanyl), in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).  Accordingly, I respectfully request that the Court issue a criminal complaint and a warrant for his arrest.

/s/ *Katie Coggins*
_____
Katie Coggins
Special Agent
Drug Enforcement Administration

Sworn to before me over the telephone and signed by me pursuant to Fed. R. Crim. P. 4.1 and 4(d) on this 30th day of January 2024.

_____
HONORABLE LISA J. CISNEROS
United States Magistrate Judge