ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

JEFFREY BORNSTEIN (CABN 99358)
Assistant United States Attorney

      450 Golden Gate Avenue, Box 36055
      San Francisco, California 94102-3495
      Telephone: (415) 436-7289
      FAX: (415) 436-7234
      Jeffrey.bornstein@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>MARCO ANTONIO VASQUEZ-MIDENZE,<br><br>    Defendant. | CASE NO. **3:24-CR-87 JD**<br><br>**UNITED STATES' SENTENCING MEMORANDUM**<br><br>Date:    June 3, 2024<br>Time:    10:00 a.m.<br>Court:  Hon. James Donato |

## I.    OVERVIEW

Marco Antonio Vasquez-Midenze was arrested during a law enforcement operation on the evening of January 29, 2024, after he was observed conducting several drug sales in the Tenderloin near Hyde Street and Golden Gate Avenue in the area of UC Law, and within a block of the Federal Building.[1]  Mr. Vasquez-Midenze was arrested by Federal Agents and found to be in possession with the

---

[1] The Offense Conduct is set forth in detail in Paragraphs 5-10 in the Presentence Report.

1

GOV. SENTENCING MEMO FOR VASQUEZ-MIDENZE
3:24-CR-87 JD

intent to distribute approximately 61.9 grams of fentanyl; and approximately 10.5 grams of cocaine base (both are gross weight including packaging). The suspected fentanyl (and cocaine base) seized from the defendant was later tested and found to be presumptive positive for fentanyl (and cocaine base) utilizing a TruNarc testing device.  When he was arrested, he also possessed a cell phone that he used in connection with his drug dealing activities and $55.00 in US Currency from a drug sale.

On March 3, 2024, Mr. Vasquez-Midenze admitted his criminal conduct and entered his guilty plea pursuant to an agreed upon B Plea Agreement.  He has been in federal custody since his arrest on January 29, 2024.[2]

The United States, in the exercise of its prosecutorial discretion, stands by its Fast Track recommendation of a time served sentence plus one business day with the caveat that a Release Order be fashioned that will ensure the defendant's release from U.S. Marshall custody so that ICE can then take him into custody based on its immigration detainer. We also seek the forfeiture of his phone and the drug proceeds ($55.00) seized during his arrest and the imposition of the mandatory and special condition of Supervised Release attached as Appendix A to the plea agreement. Although the United States is recommending a variance from the Guidelines, the Presentence Report provides the Court with more than enough information justifying the downward variance sought in this case.

The United States urges this result because it is fair, just and no harsher than necessary to meet all the criteria for sentencing. More specifically, this plea agreement is part of the United States' efforts to intervene in the drug dealing crisis plaguing the Tenderloin District of San Francisco – efforts that have thus far yielded a positive substantial impact on the Tenderloin community. In the exercise of prosecutorial discretion, the U.S. Attorney's Office has chosen to offer time served sentences with strict stay away orders to street level drug dealers who waive their right to seek pretrial release, admit their criminal conduct and criminal history, cooperate in expeditiously having their guilty pleas entered and sentencing hearings expedited if possible. We view this program as the principal way to stop, punish, and deter these offenders from returning to the Tenderloin.

The statistics bear out that this approach is working:

---

[2] This case had been designated as a Fast track case by our office.

GOV. SENTENCING MEMO FOR VASQUEZ-MIDENZE
3:24-CR-87 JD

1. There have been 67 resolved "Fast Track" cases. 64 of those defendants lacked legal status. 52 of these defendants have been deported.

2. Three defendants had legal status and are now subject to stay away orders and U.S. Probation supervision.

3. Nine defendants are currently in ICE custody, in immigration proceedings.

4. One defendant is serving time at a BOP facility.

5. One defendant, sentenced by this court, is serving time at Santa Rita.

6. One defendant who was sentenced to time served and ordered released to Marshal custody was released to Alameda County because of an open state case.

Although the defendant's case may not have been a case historically handled by the federal government, through this new program, the United States Attorney's Office is committed to prosecuting street level drug dealers because of the overwhelming harm being caused to the people who live in City of San Francisco, especially in the Tenderloin Neighborhood. For Americans aged 18-45, the leading cause of death is fentanyl overdose. The addictive drug is responsible for nearly 70% of the United States' 107,000+ drug overdose deaths in the past year and is 50 times stronger than heroin and 100 times stronger than morphine.[3]

The very thorough Presentence Report in this case provides the Court with the information needed to vary downward from the Guidelines and from Probation's recommended sentence of 12 months plus one day, (that in effect would result in a 10-month sentence).  By the time he is sentenced, Mr. Vasquez-Midenze will have served a little more than half that time. If the Court adopts the government's suggested sentence, he will however be released directly from the Marshal into ICE custody, and he will almost certainly be deported thereafter.

The defendant has admitted that he is a citizen of Honduras and that he has no legal status in this country. He has been illegally living in the United States since 2021. He also admits that he illegally entered and was returned to Honduras twice before. On July 7, 2014, he was arrested in Arizona for illegal entry into the United States and was later removed on August 21, 2014, and sent back to Honduras. He again reentered the United States on June 6, 2016, at Calexico, California and was

---

[3] https://www.getsmartaboutdrugs.gov/media/dea-administrator-record-fentanyl-overdose-deaths

GOV. SENTENCING MEMO FOR VASQUEZ-MIDENZE
3:24-CR-87 JD

deported but returned to the United States in 2021. We submit that because he will now be an aggravated drug felon, his removal from the Tenderloin and almost certainly his deportation from the United States, should serve to deter the defendant, and others similarly situated from selling drugs in the Tenderloin in the future.

**II.    APPLICABLE GUIDELINES RANGE AND CRIMINAL HISTORY CATEGORY**

The government calculates the following Guidelines range:

a.    Base Offense Level, U.S.S.G. §2D1.1:                                                                 24
Converted Drug weight of more than 100 KGs but less than 400 KGs
(Approximately 156.85 KGs, comprised of 61.9 grams of fentanyl and 10.5 grams
of cocaine base calculated as cocaine hydrochloride).[4]

b.    Acceptance of Responsibility, U.S.S.G. §3E1.1:                                          - 3

c.    Zero Point Offender Reduction                                                                        -2

d.    Adjusted Offense Level:                                                                                     19

e.    Guidelines Range 30-37 months (based on Criminal History Category I)

**III.    SENTENCING RECOMMENDATION**

Consistent with the Plea Agreement in this case, the United States is recommending a below-Guidelines sentence—accounting for the time served plus one court day in this expedited prosecution—followed by a three-year term of supervised release that includes a special condition that the defendant may not re-enter the Tenderloin during the period of supervised release.  While the recommendation does not include a prison sentence, it effectively signals to the community that the United States is working to remove these dealers from the Tenderloin, and where appropriate to send them home or at least keep them from returning to the Tenderloin.

---

[4] The Plea Agreement mistakenly calculated the Converted Drug weight at 170 Kilograms but it was actually slightly lower, 156.85 KGs.  Probation used the conversion of cocaine base verses cocaine and calculated the total weight as 194 Kilograms. The Attorney General has rejected that approach and advised USAO's to use cocaine hydrochloride instead.  These are all gross weights meaning including packaging.  The Base Offense Level 24 is the correct starting point in this case, however. *See* Addendum – Converted Drug Weight Table.

4

GOV. SENTENCING MEMO FOR VASQUEZ-MIDENZE
3:24-CR-87 JD

A.    **Section 3553 Factors**

1. ***Nature and circumstances of the offense and history and characteristics of the defendant***

The defendant is a 29-year-old man who was born in Honduras who admits that he entered to this country illegally and has no lawful status here.  The PSR details Mr. Vasquez-Midenze's background and personal characteristics. It appears the defendant came here from Honduras "in hopes of having better financial and educational opportunities".  *PSR,* par 38.  He suffered from being kidnapped on his way into the country in 2014. *PSR* par 39.  Undeterred by that experience, he returned in 2016 and was again deported. *Id*.

He came back in 2021 because he seemed determined to find a better life for himself, eventually moving to the Bay Area from where he had been staying in Minnesota, and where he met his significant other.  *PSR* at 40-42.  It looks like he moved to the Bay Area in late December 2023 or early January 2024 and that he came here not specifically to sell drugs, although that's what he ended up doing. *Id.* at 42. This is his only criminal conviction.

After his arrest, the defendant agreed to remain in custody during the pendency of this case.  He admits to possessing fentanyl in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) and acknowledges that a conviction in this case "makes it practically inevitable and a virtual certainty that he will be removed or deported from the United States."  Plea Agreement, ¶ 1

2. ***Need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment; to afford adequate deterrence to criminal conduct; and to protect the public from further crimes of the defendant***

The Tenderloin, defined in the Plea Agreement to include the historic Tenderloin Neighborhood and much of the South of Market neighborhood, is in crisis.  As the Court is aware, the proliferation of highly addictive, potent, and inexpensive synthetic controlled substances like fentanyl has exacted a crushing human toll in the Tenderloin.  The Tenderloin open-air drug market not only creates suffering for its participants (including staggering amounts of overdoses and fatalities) but also dire consequences for the people and families who live and work in the Tenderloin, as well as for San Francisco itself. Pervasive drug dealing in the concentrated neighborhood that is the Tenderloin, especially in the evenings and early morning hours, is a strong contributor to the community's feeling of being under

5

GOV. SENTENCING MEMO FOR VASQUEZ-MIDENZE
3:24-CR-87 JD

siege, where it does not feel safe to live, work or play. The effects of the defendant's offense, considered as an individual act, is destructive; the effects of the offense conduct, considered in the aggregate, are catastrophic.

In this case, even given the amount of controlled substances the defendant possessed, he was still a street level dealer and would not ordinarily have been prosecuted federally as a traditional drug dealer. If he returns unlawfully to the United States, and/or to the Tenderloin, he will be in violation of the terms and conditions of his supervised release and subject also to additional criminal penalties including those under 8 USC § 1326 for illegal reentry into the United States. Because he is pleading to an aggravated felony in this case, a 1326 conviction will subject him to additional prison time.

The proposed sentence is a downward variance from the Guidelines range but one that the government submits is appropriate although lenient. This disposition results in a drug trafficking aggravated felony conviction within weeks of arrest (not months or years), immediate separation of the defendant from the Tenderloin, and prevention of the defendant from returning to the Tenderloin. The speed at which this case moved will free up other government resources to prosecute additional federal crimes, including in the Tenderloin.

Federal prosecution efforts also act as a deterrent for other dealers including those who have previously been arrested and then released in state court who return to the Tenderloin to sell fentanyl and other illegal controlled substances. While not being punished this time with a traditional term of imprisonment, an illegal reentry or other violation of the terms of supervised following a Fast track sentence will be swift and substantially more punitive especially in the case of additional drug sales.

**B.     The Necessity of the Proposed Supervised Release Special Conditions**

A three-year term of supervised release is required by statute for the drug-trafficking offense to which the defendant has agreed to plead guilty, 21 U.S.C. § 841(b)(1)(C), and it is essential to this disposition. In particular, the special stay-away condition of release allows the government to accomplish one of its primary goals related to protection of the public: to immediately separate drug traffickers from the Tenderloin (given the defendant has remained in custody from the time of arrest) and to affect a strict stay-away from the Tenderloin for three years. Under the terms of supervised

6

GOV. SENTENCING MEMO FOR VASQUEZ-MIDENZE
3:24-CR-87 JD

release as contemplated herein, not only will the defendant be prohibited from engaging in any further unlawful conduct, but the defendant will be prohibited from entering the Tenderloin without prior approval by U.S. Probation:

> Unless authorized by U.S. Probation, the defendant shall neither enter nor be present in the area in San Francisco bordered on the west by Van Ness Avenue, on the north by Geary Street, on the east by Powell Street and 3rd Street, and on the south by Howard Street.

Combined with a suspicionless search condition, to which the parties have also agreed, Section 3553(a)'s goals of protection of the public and meaningful deterrence will be significantly advanced by the terms of this agreement, and this prosecution's impact on illicit drug trafficking in the Tenderloin will be both immediate and sustained. The stay-away condition is also necessary given the circumstances of Tenderloin drug trafficking, where the Court has repeatedly encountered recidivism from previously sentenced defendants, including those who have been removed from the country but who nonetheless returned to sell controlled substances in the Tenderloin. *See, e.g.*, *United States v. Luis Almicar Erazo-Centeno*, 3:23-cr-00002-CRB; *United States v. Gamez-Arguilio*, 3:17-CR-00553-CRB.

The government respectfully submits that the contemplated disposition here is sufficient but not greater than necessary to accomplish the goals of 18 U.S.C. § 3553(a).

## IV.    CONCLUSION

The government recommends that the Court sentence the defendant to a sentence of time served plus one court day, to be followed by a term of supervised release of three years and the special conditions agreed to by the parties in the Plea Agreement, including the stay-away condition. The complete terms and conditions of the Defendant's supervised release are set forth below in Appendix A.


DATED: May 20, 2024,                           Respectfully Submitted,


                                               ISMAIL J. RAMSEY
                                               United States Attorney


                                                _/s/ Jeffrey Bornstein_____
                                               Jeffrey Bornstein
                                               Assistant United States Attorney

7

GOV. SENTENCING MEMO FOR VASQUEZ-MIDENZE
3:24-CR-87 JD

Appendix A

## MANDATORY CONDITIONS

1)  You must not commit another federal, state or local crime.

2)  You must not unlawfully possess a controlled substance.

3)  You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

4)  You must cooperate in the collection of DNA as directed by the probation officer.

5)  You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court, and bring about improvements in your conduct and condition.

1)  You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of RELEASE, unless the probation officer instructs you to report to a different probation office or within a different time frame.

2)  After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.

3)  You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.

4)  You must follow the instructions of the probation officer related to the conditions of supervision.

5)  You must answer truthfully the questions asked by your probation officer.

GOV. SENTENCING MEMO FOR VASQUEZ-MIDENZE
3:24-CR-87 JD

6) You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with, for example), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.

7) You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by these and the special conditions of your supervision that he or she observes in plain view.

8) You must work at least part-time (defined as 20 hours per week) at a lawful type of employment unless excused from doing so by the probation officer for schooling, training, community service or other acceptable activities. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.

9) You must not communicate or interact with someone you know is engaged in criminal activity. You must not associate, communicate, or interact with any person you know has been convicted of a felony, unless granted permission to do so by the probation officer.

10) If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.

11) You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.

12) You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).

If the probation officer determines that you pose a risk to a third party, the probation officer may require

9

GOV. SENTENCING MEMO FOR VASQUEZ-MIDENZE
3:24-CR-87 JD

you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.

## SPECIAL CONDITIONS OF SUPERVISION

1) You must cooperate in the collection of DNA as directed by the probation officer.

2) You must submit your person, residence, office, vehicle, electronic devices and their data (including cell phones, computers, and electronic storage media), or any property under your control to a search. Such a search shall be conducted by a United States Probation Officer or any federal, state or local law enforcement officer at any time with or without suspicion. Failure to submit to such a search may be grounds for revocation; you must warn any residents that the premises may be subject to searches.

3) Unless authorized by U.S. Probation, the defendant shall neither enter nor be present in the area in San Francisco bordered on the west by Van Ness Avenue, on the north by Geary Boulevard, on the east by Powell Street and 3rd Street, and on the south by Howard Street.

## ADDENDUM – CONVERTED DRUG WEIGHT TABLE[5]

| Substance | Amount Possessed by Defendant | Conversion | Converted Drug Weight |
|---|---|---|---|
| Fentanyl | 61.9 grams | 1 gram = 2.5 kilograms | 154.75 kilograms |
| Methamphetamine | N/A | 1 gram = 2 kilograms | N/A |
| Cocaine (Base, calculated as HCL) | 10.5 grams | 1 gram = 200 grams[6] | 2.1 kilograms |
| Heroin | N/A | 1 gram = 1 kilogram | N/A |
| **Total** | **Including packaging** | **-** | **156.85 kilograms** |

[5] *See* §2D1.1, Application Note 8(D).

[6] Pursuant to the Attorney General's December 16, 2022, memorandum, *Additional Department Policies Regarding Charging, Pleas, and Sentencing in Drug Cases*, the government recommends that the converted drug weight for the cocaine base be determined by reference to the conversion rate for powder cocaine.

GOV. SENTENCING MEMO FOR VASQUEZ-MIDENZE
3:24-CR-87 JD