JODI LINKER
Federal Public Defender
Northern District of California
TAMARA CREPET
Assistant Federal Public Defender
19th Floor Federal Building - Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone:   (415) 436-7700
Facsimile:   (415) 436-7706
Email:          Tamara_Crepet@fd.org

Counsel for Defendant Vasquez Midenze

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | **Case No.:** CR 24-0087 JD |
| Plaintiff, | **DEFENDANT'S SENTENCING MEMORANDUM** |
| v. | |
| MARCO VASQUEZ MIDENZE, | |
| Defendant. | |

## I.      INTRODUCTION

Mr. Vasquez Midenze is a twenty-nine-year-old man who was born and raised in Honduras. His father abandoned him before he was born. His mother abandoned him when he was one-month old, leaving him with a stranger who did not sufficiently feed him. His paternal grandparents rescued him when he was two months old. As a consequence of the malnourishment he suffered, he was hospitalized for several months and was unable to walk until he was five years old.

Mr. Vasquez Midenze's grandparents were poor. In order to help his family survive, he began working at the age of twelve. He farmed corn and beans, making four dollars per week. He eventually came to the United States in the hopes of earning more money to help his family and specifically to help afford an operation for his seven-year-old son, who lives in Honduras and suffers from tonsillitis. It is this immediate financial need that contributed to Mr. Vasquez Midenze's instant offense conduct of selling drugs.

In light of these mitigating circumstances, Mr. Vasquez Midenze respectfully requests a time-served sentence, and three years of supervised release, consistent with the recommendation of the government. At the time of sentencing, Mr. Vasquez Midenze will have spent approximately five months and three weeks in custody.

Mr. Vasque Midenze is a citizen of Honduras and understands that he will almost certainly be deported there upon the completion of his proceedings in this Court.

## II.    PROCEDURAL HISTORY AND GUIDELINES

On January 31, 2024, the Government filed a complaint charging Mr. Vasquez Midenze with possession with intent to distribute fentanyl. Dkt. 1. Mr. Vasquez Midenze waived indictment, and an Information was filed on February 12, 2024. Dkt. 9. On March 4, 2024, Mr. Vasquez Midenze entered a plea of guilty to the one charged distribution count. Dkt. 22.

The plea agreement sets forth an adjusted offense level of 19. Dkt. 20. Mr. Vasquez Midenze has no prior criminal arrests or convictions. Presentence Report (PSR) at ¶¶ 26, 27. He is therefore criminal history category 1, and his concomitant guideline range is 30-37 months.

## III.    BACKGROUND

Marco Vasquez Midenze was born in Honduras and is the youngest of his parents' three children. Presentence Report (PSR) at ¶ 35. His father abandoned him before he was born[1], and his mother abandoned him shortly after he was born. *Id.* at ¶ 36. She left him with an unknown

---

[1] Mr. Vasquez Midenze's father was absent during his infancy and childhood, but Mr. Midenze Vasquez and his father reconnected during his adulthood and they speak approximately every three months. PSR at ¶ 35.

*VASQUEZ MIDENZE*, CR 24–0087 JD

woman who did not feed him enough, causing him to nearly die of starvation. *Id.* His paternal grandparents became aware of the circumstance and rescued Mr. Vasquez Midenze, but he was so malnourished that he had to be hospitalized. *Id.* The hospital staff did not have confidence that he would survive. *Id.* While he lived, he had to undergo treatment for malnourishment for four years. *Id.* He also was unable to walk until around the age of five years old because of his condition. *Id.*

Mr. Vasquez Midenze was raised in abject poverty. He and his grandparents lived in a two-room house that did not have running water or electricity. *Id.* at ¶ 37. In order to keep clean, Mr. Vasquez Midenze would often wake up at 5:00 a.m. to go to the river to bathe before school. *Id.* His family did not have money for adequate food, and there were many days when they were only able to eat tortillas with salt. *Id.*

Mr. Vasquez Midenze did what he could to help his family survive even from a very young age. Beginning at nine years old, he walked forty-five minutes after school to collect firewood so that his family could use it for cooking. *Id.* at ¶ 38. At the age of fourteen years old he could no longer afford to go to school. *Id* at ¶¶ 38, 47. He began working in the fields growing corn and beans, and for his efforts, he earned four dollars per week. *Id.* at ¶ 38.

When Mr. Vasquez Midenze was around nineteen years old, he came to the United States in search of work opportunities. *Id.* at ¶ 39. He needed to make money because his family was suffering particularly because his grandfather's health grew worse and he was unable to work as much as he had in the past. *See id.* at ¶¶ 38, 39.

Mr. Vasquez Midenze's trip to the United States was harrowing. One of the worst parts of the journey was riding a train in Mexico infamously known as "the Beast."[2] Like many other

---

[2] "Thousands have died or been gravely injured aboard La Bestia, either because of the frequent derailments of the old freight trains, or because people fall off during the night. The most minor oversight can be fatal. Some compare La Bestia to a demon, others to a kind of vacuum that sucks distracted riders down into its metal entrails. And when the train itself is not the threat, it's the smugglers, thieves, policemen or soldiers who frequently threaten, blackmail or attack the people on board. There is a saying about La Bestia: 'Go in alive, come out a mummy.'" "Riding 'the beast': child migrants reveal full horror of their journeys to America," *The Guardian*, Oct. 5, 2017, available at:

*VASQUEZ MIDENZE*, CR 24–0087 JD

immigrants travelling to the United States, Mr. Vasquez Midenze rode on the roof of this train where he was exposed to the elements and faced the possibility of falling off the train and losing a limb or getting killed. Mr. Vasquez Midenze experienced other horrors during his travels including being kidnapped for a week during which he feared for his life. *Id.* at ¶ 39.

Mr. Vasquez Midenze's initial trip to the United States was not successful and he was deported at the border. Two years later, after the birth of his son, who suffered from medical problems, he again came to the United States to work to make money to pay for his son's expensive medical care. *Id.*

Upon arriving in the United States, Mr. Vasquez Midenze settled in Minnesota where he worked in construction, siding, remodeling, and snow removal for several years. *Id.* at ¶¶ 40, 48. He subsequently came to San Francisco in search of better work opportunities, and was arrested for the instant offense conduct shortly after he arrived here. *Id.* at ¶ 41.

Mr. Vasquez Midenze is looking forward to returning to his son, with whom he communicates twice per week, and is planning to work hard to support his family in Honduras. *See id.* at ¶ 42.

### IV. LEGAL STANDARD

The Court is familiar with the directives of *United States v. Booker*, 543 U.S. 220 (2005) and 18 U.S.C. § 3553(a). In reaching an appropriate sentence, the Court must consider several factors including the Guidelines range, the nature and circumstances of the offense, the history and characteristics of the defendant, and the need to avoid unwarranted sentence disparities among similarly situated defendants. 18 U.S.C. § 3553(a)(1), (a)(4) and (a)(6).

### V. ARGUMENT

Several matters warrant the Court's consideration in connection with the § 3553(a) factors and Mr. Vasquez-Midenze's request for a time-served sentence and three years of supervision.

---

https://www.theguardian.com/inequality/2017/oct/05/riding-the-beast-child-migrants-reveal-full-horror-of-their-journeys-to-us

*VASQUEZ MIDENZE*, CR 24–0087 JD

4

*First*, Mr. Vasquez-Midenze's upbringing in extreme poverty in combination with his parents' abandonment of him as an infant warrant a variance to time-served. Mr. Vasquez Midenze grew up without basic life necessities including running water and an adequate amount of food. He was forced to perform grueling physical labor as a child, earning only four dollars per week for his efforts.

In addition, the instant offense conduct is born from desperation to pay for medical treatment for his son and to help pay for basic necessities for his family. While this does not excuse his conduct, the defense respectfully asserts that it mitigates it. *Landrigan v. Schriro*, 441 F.3d 638, 648 (9th Cir. 2006) ("Where a defendant's crime is attributable to a disadvantaged background or emotional or mental problems the defendant is less culpable than one without the excuse.")

*Second,* a sentence of time-served is appropriate given the nature and circumstances of the offense. Mr. Vasquez Midenze engaged in street-level drug dealing. His conduct did not involve the use of violence and he did not possess a weapon. He did not have a managerial role in the trafficking of drugs, nor does he have significant ties to a large-scale criminal organization or cartel, or to a violent gang. In this same vein, he does not have a significant history of criminal activity that involved the threat of violence, or personal involvement in the sale of drugs, or possession of illegal firearms. Indeed, he has no prior criminal convictions at all.

The fact that Mr. Vasquez Midenze is neither a manager nor leader of a drug enterprise is also significant because Congress created the sentencing scheme for drug offenders specifically to punish individuals holding those roles; Congress did not intend to severely punish low-level drug dealers with no prior criminal convictions. *See United States v. Diaz*, No. 11-CR-00821-2 JG, 2013 WL 322243, at *6 (E.D.N.Y. Jan. 28, 2013). These circumstances warrant a variance to a time-served sentence.

*Third*, a sentence of time-served is appropriate because it is commensurate with (and given that Mr. Vasquez Midenze has spent nearly six months in custody significantly greater than) sentences received by other defendants who were convicted of dealing similar quantities

of drugs. For example, in *United States v. Erias-Gamez*, 23-CR-394 EMC, Mr. Erias-Gamez had seven prior drug-related arrests, a prior deportation, and an adjusted offense level of 19. Erias-Gamez, Dkt. 14 at p. 3 (sentenced to time served after approximately eight weeks in custody). In *United States v. Rodriguez Casco*, 23-CR-00401 VC, Mr. Rodriguez Casco had an adjusted offense level of 21, dkt. 45; one prior removal, dkt. 50 at Ex. A; two prior felony convictions, including one drug-sale related felony and one violent felony; and, two prior drug-related arrests, dkt. 54 at p. 1-2 (sentenced to time served after approximately six weeks in custody). In *United States v. Collindres Godoy*, 24-CR-66 MMC, Mr. Colindres Godoy had an adjusted offense level of 21, dkt. 12 at 2, and two prior arrests, dkt. 13 at 4 (sentenced to time-served after approximately eight weeks in custody).

## VI. CONCLUSION

Based on the above, Mr. Vasquez Midenze respectfully requests that the Court sentence him to time-served, which will be approximately five months and three weeks, and three years of supervised release.

Respectfully submitted,

Dated:   June 7, 2024

JODI LINKER
Federal Public Defender
Northern District of California

                        /S
TAMARA CREPET
Assistant Federal Public Defender